[Cite as *Carte v. The Manor at Whitehall*, 2014-Ohio-5670.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Rhoda Carte, Administrator [of the Estate of Aaron J. Carte, Deceased], | : | |
| | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 14AP-568 |
| | : | (C.P.C. No. 13CVA8033) |
| The Manor at Whitehall et al., | | |
| | : | (ACCELERATED CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on December 23, 2014

*James V. Blumenstiel*, for appellant.

*Poling Law, G. Michael Romanello, Brant E. Poling* and *Andrew S. Good*, for appellee The Manor at Whitehall.

APPEAL from the Franklin County Court of Common Pleas

TYACK, J.

{¶ 1}    Plaintiff-appellant, Rhoda Carte, the widow and administrator of the estate of Aaron J. Carte, is appealing from adverse rulings of the Franklin County Court of Common Pleas dismissing the lawsuit she filed against defendant-appellee, The Manor at Whitehall, the nursing home where Aaron Carte was residing when he fell and received the injuries which ultimately led to his death.

I. Facts and Procedural History

{¶ 2}    Aaron Carte was 76 years old when, on December 1, 2011, he fell while living at The Manor at Whitehall. Carte had undergone back surgery and after being discharged

from the hospital was transferred to The Manor at Whitehall for rehabilitation and nursing care.[1]

{¶ 3}  According to the complaint, Carte suffered from a medical condition which made him at increased risk for falling.  As a result, any time Carte was being moved, the move was supposed to be attended by two staff people.  When Carte had his fall on December 1, 2011, he was attended by only a single staff person, allegedly because the nursing home was short on staff that day.  The fall resulted in Carte striking his head on a door jamb.  He suffered a significant laceration to his forehead and a subarachnoid hemorrhage.  He died two months later on February 10, 2012.  The death certificate indicated that the cause of death was failure to thrive due to subarachnoid hemorrhage.

{¶ 4}  On March 29, 2013, Rhoda Carte filed a survivorship action against The Manor at Whitehall, alleging negligence against the nursing home for failing to provide adequate staffing.  After the lawsuit was filed, the attorneys for the nursing home argued that the lawsuit involved a medical claim, and the estate had not provided an affidavit of merit required by Civ.R. 10(D)(2).

{¶ 5}  The trial court judge assigned to the case agreed with the nursing home and ordered the lawsuit to be dismissed.

{¶ 6}  The estate filed a second lawsuit on July 24, 2013, alleging both common law negligence and a medical negligence claim.  Along with the complaint, the plaintiff submitted the affidavit of merit of Joahnna Dwan Evans Budge, RN, CCRN, CLNC with an attached opinion letter.

{¶ 7}  Nurse Budge stated: "After reviewing the medical records, it is my opinion that the Manor at Whitehall staff were responsible for Mr. Carte's fall on December 1, 2011, his subsequent injuries which led to the decline of his health and eventual demise."

{¶ 8}  She also noted:  "Mr. Carte is documented as requiring 2 staff members assist with ambulation and toileting on 11/28/2011 and the day shift of 11/29/2011, but the 2-staff member assist was changed to 1 staff assist on these assessment documents on the day of his fall 11/30/2011.  There is no fall risk assessment documented for the 12/1/2011 day shift, or has not been produced at this time."

---

[1] Carte initially fell on November 30, 2011 while attempting to get out of bed alone.  He was found on the floor beside his bed by facility staff and assisted back to bed.

{¶ 9} Nurse Budge further opined: "Allowing Mr. Carte to fall, using inadequate staff to assist him with out of bed activity and ambulation and placing Mr. Carte at risk for injury, was below the standard of safe and prudent nursing care and practice."

{¶ 10} After a period of discovery, counsel for the nursing home filed a motion to dismiss on April 11, 2014, alleging that the affidavit of merit filed with the second lawsuit did not comply with or satisfy Civ.R. 10(D)(2) and therefore the complaint again failed to state a claim for relief. The trial court judge again agreed and dismissed the case resulting in the present appeal.

## II.  Assignments of Error

{¶ 11} Rhoda Carte assigns three errors for our consideration:

[I.] The Trial Court erred in ruling that Plaintiff-Appellant's negligence claim in the complaint failed to state a claim pursuant to Ohio Civil Rule 12(B)6.

[II.] The Trial Court erred in ruling Plaintiff-Appellant's Affidavit of Merit Expert was not qualified to offer an opinion that the deviation from the standard of care caused injury pursuant to the Ohio Civil Rule 10(D)2.

[III.] The Trial Court erred in disregarding all of the discovery evidence, depositions, undisputed Medical Records Opinions expressed and the coroner's causation opinion in the Death Certificate, when it ruled Plaintiff-Appellant's Complaint failed to state a claim pursuant to Ohio Civil Rule 12(B)6 because Plaintiff-Appellant's 10(D)(2) Affidavit of Merit Expert lacked expertise to opine the fall caused some injury.

## III. First Assignment of Error

{¶ 12} We first address the question of whether or not the complaint stated a claim for common law negligence. The Manor at Whitehall argues the lawsuit involved a medical claim. "Medical claim" is defined by R.C. 2305.113(E)(3)(b) which provides, in pertinent part, as follows:

"Medical claim" means any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice registered nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency

medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person. "Medical claim" includes the following:

* * *

(b) Claims that arise out of the medical diagnosis, care, or treatment of any person and to which either of the following applies:

(i) The claim results from acts or omissions in providing medical care.

(ii) The claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.

{¶ 13} The legislature has defined "medical claim" to include any lawsuit against any nursing home which "arise[s] out of the medical diagnosis, care, or treatment of any person." R.C. 2305.113(E)(3)(b).

{¶ 14} Counsel for the estate argues that moving a nursing home patient from a toilet to a bed does not involve "medical care," so the lawsuit does not involve medical care and is not a medical claim. There is case law which supports the estate's position.

{¶ 15} In *Ramage v. Cent. Ohio Emergency Serv., Inc.*, 64 Ohio St.3d 97 (1992), the Supreme Court of Ohio noted that allegations of negligence with regard to patients who fell from their hospital beds while unattended were claims of ordinary negligence; that in a negligence action involving conduct within the common knowledge and experience of jurors, expert testimony is not required. *Id.* at 103.

{¶ 16} In *Conkin v. CHS-Ohio Valley, Inc.*, 1st Dist. No. C110660, 2012-Ohio-2816, the First District Court of Appeals examined whether transfer of a nursing home patient from her wheelchair into a device known as a "Hoyer lift," constituted medical care under the statute. In holding that it did not, the court examined two Supreme Court cases addressing the issue: *Browning v. Burt*, 66 Ohio St.3d 544 (1993) and *Rome v. Flower Mem. Hosp.,* 70 Ohio St.3d 14 (1994). In *Browning*, the Supreme Court held that "care" as used in a prior but analogous version of R.C. 2305.113(E)(3) refers to "the prevention

or alleviation of a physical or mental defect or illness."  *Id.* at 557.  The *Browning* court also held that the term "care" should not be broadly interpreted.  *Id.*

{¶ 17}  In *Rome*, the Supreme Court addressed the circumstances under which the allegedly negligent use of medical equipment is considered a medical claim.  In *Rome*, a plaintiff sustained an injury when his wheelchair collapsed as he was being taken to physical therapy.  In holding that the complaint alleged a medical claim, the court stated that "the transport of [the plaintiff] from physical therapy was ancillary to and an inherently necessary part of his physical therapy treatment."  *Id.* at 16.

{¶ 18}  Thus, to determine whether the use of medical equipment constitutes "care" under R.C. 2305.113(E)(3), the court must first determine if the equipment was used for "the prevention or alleviation of a physical or mental defect or illness." *Browning* at 557. This determination rests upon whether the equipment was an inherently necessary part of a medical procedure or if the use of the equipment arose out of a physician-ordered treatment.  *Rome* at 16.

The *Conkin* court concluded that, even if the Hoyer lift was used for the alleviation of problems associated with the patient's range of motion, there was no indication that the use of the Hoyer lift was an inherent part of a medical procedure or that it arose out of physician-ordered treatment.  Instead, the patient was being transferred so that she could take a shower.  *Id.* at 11.

{¶ 19}  In the instant case, no medical equipment was used to effect Carte's transfer to and from the bathroom.  Thus, the only issue central to our analysis is whether the staff of The Manor at Whitehall were providing medical care within the meaning of the statute when assisting Carte to and from the bathroom.

{¶ 20}  Recently, this court found ordinary negligence and not a medical claim when a resident in an assisted living facility was dumped from a wheelchair while being transported to the dining room to eat lunch.  In *Eichenberger v. Woodlands Assisted Living Residence, LLC*, 10th Dist. No. 14AP-272 (Dec. 14, 2014), this court stated:

> In light of the prevailing case law, the only reasonable inference that may be drawn from appellant's affidavit is that decedent's transportation to the common dining room in order to eat lunch was neither ancillary to nor an inherently necessary part of any prescribed care or treatment.  The undisputed evidence in this case distinguishes appellant's

> claim from the claim asserted by the plaintiff in *Rome.* In this case, as in *Belasco* [*Balascoe. v. St. Elizabeth Hosp. Med. Ctr.,* 110 Ohio App.3d 83, 85 (7th Dist. 1996)]*, Conkin,* and *Hill* [*Hill v. Wadsworth-Rittman Area Hosp.,* 185 Ohio App.3d 788, 2009-Ohio-5421 (9th Dist.)], decedent's injuries did not occur during her transportation to or from a medical test, procedure or treatment. Consequently, appellant has not alleged an injury that arises out of the medical diagnosis, care, or treatment.

*Id.* at ¶ 20.

{¶ 21} In another nursing home case, *Haskins v. 7112 Columbia, Inc.*, 7th Dist. No. 13 MA 100, 2014-Ohio-4154, employees of a nursing home allegedly caused a patient to break her leg while they were changing her bed linens. The patient was bedfast, unable to walk independently, weighed between 300 and 400 pounds and required constant daily care and monitoring. While two staff members attempted to move the patient to extract a bed sheet that had become lodged beneath her, the patient suffered a fracture of her left femur.

{¶ 22} The administrator of the patient's estate brought an action alleging ordinary negligence, but the trial court granted judgment on the pleadings in favor of the nursing home on the grounds that the claim was a medical claim and therefore barred by the statute of limitations. The court of appeals reversed, finding no indication in the record that changing bed sheets was part of some type of medical test or procedure, was ordered by a doctor, or that it required any medical expertise or professional skill. The court stated that not all injuries that a patient might sustain in a hospital or nursing home are necessarily medical claims. *Id.* at ¶ 16.

{¶ 23} Similarly, in *Balascoe v. St. Elizabeth Hosp. Med. Ctr.,* 110 Ohio App.3d 83, 85 (7th Dist.1996), the same court held that falling on the way to the bathroom was not a medical claim arising directly from medical diagnosis, care or treatment, even though the patient had called for a nurse to assist her but did not wait for her in walking to the bathroom.

{¶ 24} In *McDill v. Sunbridge Care Ents., Inc.*, 4th Dist. No. 12CA8, 2013-Ohio-1618, a patient was assisted by two aides in using the bathroom, but she fell while washing her hands, allegedly due to the aides not paying attention. The patient argued her claim was not a medical claim but one of common law negligence by the two aides. The facility

argued the claim arose out of the failure of the staff to follow "medical instructions," because a physician had ordered her not to leave her bed unassisted. Thus, the facility argued the claim was a medical claim arising out of the medical diagnosis, care or treatment of the patient. The court found that the patient's injury arose because she had to use the bathroom not because she was in the process of receiving medical diagnosis, care or treatment. The court also found that her injury did not arise because the aides failed to follow physician's orders that the patient not leave her bed without assistance. Thus, the court rejected the argument that the patient's injury arose out of the aides' failure to follow the physician's order that the patient not leave her bed without assistance. Rather, the patient had alleged that her injury occurred after the two aides "assisted her to the bathroom but then stood by talking while she stood at the sink and washed her hands." *Id.* at ¶ 5.

{¶ 25} Here, we agree with the reasoning of the court in *McDill*, that Carte's injury arose because he had to use the bathroom not because he was in the process of receiving medical diagnosis, care or treatment. We fail to see how staff assistance to and from the bathroom involved "the prevention or alleviation of a physical or mental defect or illness." *Browning* at 557.

{¶ 26} In its decision dismissing the original complaint, the trial court acknowledged the similarities between the instant case and *McDill*. However, the trial court found the existence of a medical claim because Carte allegedly had orders for a two person transport, and was a known risk for falls because of his medical condition that caused his legs to collapse unexpectedly. (June 6, 2013 Decision and Entry Granting Defendant's Motion to Dismiss filed April 13, 2013, at 7.)

{¶ 27} Attached to the complaint in this case are two documents each entitled "HEAD TO TOE ASSESSMENT" and dated November 29, and 30, 2011 respectively. The signatures on the documents are illegible, and neither appears to be a physician's order. The documents have various boxes checked off indicating categories such as physical functioning, pulmonary, cardiovascular, pain, musculoskeletal, skin, mood, behavior, and so on. The document dated November 29, 2011 indicates number of staff "two" for toilet use, while the document dated November 30, 2011 indicates number of staff "one" for toilet use.

{¶ 28} At oral argument, counsel for The Manor at Whitehall was careful to state there was an "alleged physician order" for two persons to assist Carte. However, the complaint and attached exhibits do not specify any *physician* orders for two person transfers. The complaint states, in pertinent part, that: "Defendant issued staff orders that anytime Decedent Aaron Carte was to be transferred from bed to bathroom or other transfers, he was to be assisted by two aides." Complaint at ¶ 5. It is not clear from the face of the complaint that a physician issued an order for a two person transfer. However, a physician's order is not determinative in this case.

{¶ 29} Since not all care that transpires in a hospital or nursing home involves "medical care" within the meaning of R.C. 2305.113(E)(3)(b), we find that it is possible to assert a claim for ordinary negligence against a nursing home or facility and that, under the reasoning of the above referenced cases, Aaron Carte's estate has done so. We therefore sustain the first assignment of error.

## IV. Second Assignment of Error

{¶ 30} Turning to the second assignment of error, were this a medical claim, The Manor at Whitehall argues the affidavit of merit was insufficient because a nurse is not qualified to opine as to whether the breach of the standard of care proximately caused injury to the plaintiff.

{¶ 31} Here, the standard of care was set by The Manor at Whitehall when it required that two staff persons were needed to assist Carte when he was being moved within the facility. There is no serious debate that The Manor at Whitehall failed to abide by the standard of care to which it agreed.

{¶ 32} Civ.R. 10(D)(2) provides, in pertinent part:

> [A] complaint that contains a medical claim* * * shall include one or more affidavits of merit relative to each defendant named in the complaint for whom expert testimony is necessary to establish liability. Affidavits of merit shall be provided by an expert witness pursuant to Rules 601(D) and 702 of the Ohio Rules of Evidence. Affidavits of merit shall include all of the following:
>
> (i) A statement that the affiant has reviewed all medical records reasonably available to the plaintiff concerning the allegations contained in the complaint;

**(ii)** A statement that the affiant is familiar with the applicable standard of care;

**(iii)** The opinion of the affiant that the standard of care was breached by one or
more of the defendants to the action and that the breach caused injury to the plaintiff.

{¶ 33} The rule provides that a complaint which contains a medical claim must include an affidavit of merit from an affiant who meets the qualifications of an expert witness pursuant to Evid.R. 601(D) and 702. The affiant must state that she has reviewed all medical records concerning the allegations, that the affiant is familiar with the standard of care, and that in the opinion of the affiant, the standard of care was breached by the defendant and that the breach caused the injury to the plaintiff. Civ.R. 10(D).

{¶ 34} Nurse Budge's affidavit and letter attached to the complaint states that she reviewed the medical and treatment records from The Manor at Whitehall and the emergency room record from Mt. Carmel Hospital. She stated that The Manor at Whitehall staff were responsible for his fall and his subsequent injuries. She further stated that allowing Mr. Carte to fall, using inadequate staff to assist him with out-of-bed activity and ambulation, placed him at risk for injury and was below the standard of safe and prudent nursing care and practice. Thus, her affidavit of merit fulfills the requirements of Civ.R. 10(D)(2).

{¶ 35} The Manor at Whitehall argues that a nurse is not authorized to practice medicine, and therefore cannot opine on causation. Expert testimony is generally required to prove the elements of medical negligence whenever those elements are beyond the common knowledge and understanding of the jury. *Williams v. Lo*, 10th Dist. No. 07AP-949, 2008-Ohio-2804, ¶ 11.

{¶ 36} "Although expert testimony is generally necessary to establish the applicable standard of care in a malpractice claim, 'matters of common knowledge and experience, subjects that are within the ordinary, common and general knowledge and experience of mankind, need not be established by expert opinion testimony.' It has been held, for example, that when a patient's fall is caused by the inattentiveness of a nurse, the plaintiff need not produce expert testimony to establish that injuries were caused by the

nurse's negligence." *Tranter v. Mercy Franciscan Hosp. W. Hills*, 1st Dist. No. C-061039, 2007-Ohio-5132, ¶ 9.

{¶ 37} It follows that, if the issue of proximate cause is within the common knowledge of a layperson, then Nurse Budge could proffer an opinion that Carte's injuries were caused by the negligence of the staff at The Manor at Whitehall.

{¶ 38} The element of causation was within the common knowledge of the trial court. Nurse Budge reviewed the records and opined that the staff of The Manor at Whitehall were responsible for Carte's fall. Once Nurse Budge had expressed the opinion that the staff's negligence had caused the fall, no additional expert testimony was required to support the allegation that the fall had caused injuries to Carte. *Tranter* at ¶ 10. Although Nurse Budge is arguably not competent to establish that the subarachnoid hemorrhage caused Carte's death after the fall, she was qualified to express the opinion that the staff's alleged breach of duty had "caused injury to the plaintiff" within the meaning of Civ.R. 10(D)(2)(iii).

{¶ 39} The second assignment of error is sustained.

## V. Third Assignment of Error

{¶ 40} Based upon our resolution of the first two assignments of error, the third assignment of error is rendered moot.

## VI. Disposition

{¶ 41} Having sustained the first and second assignments of error and rendering the third assignment of error as moot, the judgment of the Franklin County Court of Common Pleas is reversed, and the case is remanded for further appropriate proceedings.

*Judgment reversed and remanded for further proceedings.*

BROWN and LUPER SCHUSTER, JJ., concur.

_____