[Cite as *Chalmers v. HCR Manorcare, Inc.*, 2017-Ohio-5678.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Kim Chalmers, etc.                                Court of Appeals No. L-16-1143

　　　　Appellant                                Trial Court No. CI0201402776

v.

HCR Manorcare, Inc., et al.                      **DECISION AND JUDGMENT**

　　　　Appellees                                Decided:  June 30, 2017

* * * * *

Michael J. Fuller, Jr. and D. Bryant Chaffin, for appellant.

Robert M. Anspach, J. Randall Engwert and Joseph S. Center,
for appellees.

* * * * *

**JENSEN, P.J.**

## I.  Introduction

{¶ 1} Appellant, Kim Chalmers, acting individually and on behalf of the wrongful

death beneficiaries of her father, John Costell, Sr., appeals the judgment of the Lucas

County Court of Common Pleas, granting summary judgment to appellees, HCR

ManorCare, Inc., HCR Manor Care Services, Inc., Heartland Employment Services, LLC, Heartland of Waterville OH, LLC, Becky Ziviski, John Does 1 through 10, and unidentified entities 1 through 10, on appellant's claims for wrongful death, medical malpractice, breach of fiduciary duty, fraud, and premises liability.

## A. Facts and Procedural Background

{¶ 2} The prominent facts of this case are largely undisputed. On May 11, 2013, Costell was transported to the University of Toledo Medical Center (UTMC) because he was having difficulty breathing. Costell suffered from advanced COPD. According to the emergency room physician's notes found in Costell's medical records, Costell "was critically ill and required critical services including evaluation and management of [patient] with [respiratory] failure and atrial fibrillation with [rapid ventricular response]." Further, the record reveals that Costell was awaiting a lung transplant at the time of his admission to the hospital, although at least one of Costell's physicians was skeptical as to whether Costell would survive a transplant surgery. Notably, the aforementioned medical records indicate that Costell had no history of falling and was therefore not a fall risk.

{¶ 3} Costell was eventually transferred to Toledo Hospital. On May 18, 2013, Costell was released from Toledo Hospital and admitted into skilled nursing care at Heartland of Waterville (Heartland), a nursing home located in Lucas County. The record reveals that Costell was suffering from pneumonia at the time he entered Heartland's care.

2.

**{¶ 4}** On June 6, 2013, appellant took Costell to a doctor's appointment at which he discussed the possibility of undergoing a lung transplant procedure. According to appellant's deposition testimony, Costell complained that he was experiencing dizziness while at the doctor's office.

**{¶ 5}** The following day, June 7, 2013, employees at Heartland discovered Costell lying on the floor of his bathroom bleeding from the side of his head. According to appellant, Costell became dizzy while making his way to his bathroom. Upon entering the bathroom, Costell passed out and hit his head in the ensuing fall.

**{¶ 6}** Shortly after the fall, Costell began complaining of left hip pain. Costell remained at Heartland for several hours while he awaited the arrival of an x-ray technician to take an x-ray of his hip. Once the technician arrived, she determined that it would not be possible to take an on-site x-ray of Costell's hip. Consequently, Costell was transferred to UTMC, where he was eventually diagnosed with a fractured left hip. While in the hospital, Costell developed a C. difficile infection. The infection eventually went septic. Unfortunately, Costell succumbed to the sepsis on June 16, 2013, nine days after being transferred from Heartland to UTMC.

**{¶ 7}** Thereafter, on June 11, 2014, appellant filed a 61-page complaint with the trial court in her individual capacity and as a representative of Costell's wrongful death beneficiaries.

**{¶ 8}** In her complaint, appellant asserted 11 counts. The first two counts, styled as corporate negligence, generally alleged that Costell was injured and ultimately died as

3.

a direct and proximate result of the entity appellees' failure to provide adequate staffing at Heartland and failure to implement adequate guidelines, policies, and procedures for identifying and correcting nursing home deficiencies and alerting residents to such deficiencies. A similar claim was brought under count three against Heartland's administrator, Becky Ziviski.[1]

{¶ 9} In Counts 4 and 5, appellant alleged that the entity appellees breached their duty to provide Costell with certain residents' rights under contract and applicable state and federal statutes. Once again, appellant asserted that the breach was due to inadequate staffing, failure to implement proper nursing home guidelines and procedures, misallocation of nursing home resources, and failure to recognize, report, and correct instances of non-compliance with applicable statutes and regulations.

{¶ 10} Counts 6 and 7 were styled as medical malpractice claims against the entity appellees. In these claims, appellant alleged that the entity appellees failed to meet the applicable standard of care by, among other things, (1) failing to notify a doctor of significant changes in Costell's medical condition; (2) failing to respond to such changes; (3) failing to develop, implement, and update an appropriate care plan to meet Costell's needs; (4) failing to maintain appropriate records; (5) failing to provide sufficient staffing to care for Costell; (6) failing to adequately assess, evaluate, and supervise the nursing staff to ensure compliance with corporate policies and applicable regulations; (7) failing

---

[1] Ziviski was made a party to this action upon the filing of appellant's amended complaint on January 15, 2015.

4.

to take measures to prevent Costell's infection and, after said infection set in, failing to adequately treat the infection; and (8) failing to prevent Costell from developing pneumonia. Appellant went on to allege that the foregoing failures proximately caused Costell's fall. As such, appellant asserted that these failures were "negligent, grossly negligent, willful, wanton, malicious and reckless."

{¶ 11} Appellant's eighth count was a "malice" claim premised on the aforementioned conduct, which appellant alleged demonstrated appellees' gross disregard for Costell's safety. The ninth and tenth counts alleged claims for fraud and breach of fiduciary duty, respectively, against the entity appellees. In the fraud claim, appellant asserted that the entity appellees "misrepresented the material fact that they were willing to, and would, provide the proper care, treatement, and services to [Costell], when, in fact, [appellees] knew that they would provide as little care, treatment, and services as possible in order to maximize [appellees'] profit at the expense of [Costell]." Appellant also contended that the entity appellees breached their fiduciary duty to Costell by failing to provide him with the appropriate level of care to which he was entitled, by accepting payment for services that were not provided, and by concealing their abuse and neglect of Costell.

{¶ 12} For her eleventh and final count, appellant asserted a premises liability claim against appellees. This claim was essentially based on appellant's prior allegations that Heartland was insufficiently staffed, lacked an appropriate allocation of resources to care for the residents, and was staffed by unqualified nursing personnel. Appellant

5.

alleged that appellees failed to warn Costell of these conditions, which led to his eventual fall and ultimate demise.

{¶ 13} Attached to appellant's complaint was an affidavit of merit in which Holly Brown, a geriatric nurse practitioner and registered nurse, indicated that she reviewed Costell's medical records from Heartland and UTMC. Based upon her education, training, and experience, as well as her review of Costell's medical records, Brown opined, within a reasonable degree of nursing probability, that appellees "did deviate from the accepted standards of nursing care in the treatment of [Costell] and these deviations did result in and proximately caused [Costell] to suffer severe injuries and damages." Brown went on to specify several examples of appellees' alleged deviations in the standard of care. According to Brown's affidavit, appellees' deviations from the standard of care proximately caused Costell to suffer injuries including a left hip fracture, dehydration, sepsis, and pneumonia. Notably, Brown did not opine as to whether appellees' conduct was the proximate cause of Costell's death.

{¶ 14} One month after appellant filed her complaint, appellees filed their answer, in which they generally denied appellant's allegations and asserted several affirmative defenses. Relevant here, appellees urged that the claims contained in appellant's complaint were barred by the applicable statute of limitations. Further appellees asserted that appellant's claims were procedurally deficient under Civ.R. 10.

{¶ 15} Following extensive pretrial discovery, appellees filed a motion for summary judgment on October 30, 2015.[2]  In their motion, appellees argued that they were entitled to summary judgment as to all claims contained in appellant's complaint. Specifically, appellees urged that Counts 1, 3, 4, 6, 9, 10, and 11 all constituted medical claims subject to a one-year statute of limitations, which expired before appellant filed her complaint.  Appellees next argued that appellant's malice claim contained in Count 8 amounted to a request for punitive damages and should be dismissed because independent claims for punitive damages are not recognized in Ohio and punitive damages are not available in association with the wrongful death claims that remained after dismissing the medical claims.  Finally, appellees asserted that appellant's complaint was insufficiently pleaded because Brown's affidavit of merit did not establish the cause of Costell's injury or death and Brown acknowledged that she was not competent to opine as to the cause of Costell's death.

{¶ 16} On November 17, 2015, appellant filed a response in opposition to appellees' motion for summary judgment.  In the response, appellant conceded that her malice claim could not stand as an independent claim.  Appellant indicated that she included such a claim in her complaint to put appellees on notice that she was seeking

---

[2] Along with the motion for summary judgment that is at issue here, which was filed on behalf of all appellees collectively, three additional motions for summary judgment were filed with the trial court, each seeking relief on different bases and for certain individual appellees.  Consistent with the trial court's grant of summary judgment as to the collective motion that disposed of all of appellant's claims against all appellees, the court denied the remaining motions for summary judgment as moot.

punitive damages in this action. Additionally, appellant argued that appellees could not establish that HCR ManorCare, Inc., HCR Manor Care Services, Inc., Heartland Employment Services, LLC, and Becky Ziviski were medical providers under R.C. 3721.01(A)(6). Consequently, appellant argued that the claims brought against appellees in Counts 1, 3, 4, 6, 9, 10, and 11 were not medical claims subject to the one-year statute of limitations pursuant to R.C. 2305.113. Further, appellant insisted that all but two of her claims fell outside the realm of medical claims because they did not arise from Costell's receipt of care, treatment, or diagnosis. Instead, appellant claimed that "the majority of [her] allegations are that [appellees] were negligent in their corporate and administrative capacity which caused systemic operational failures at Heartland of Waterville."

{¶ 17} As to the wrongful death claims that appellees argued should be dismissed based upon appellant's failure to attach an adequate affidavit of merit to the complaint, appellant argued that an affidavit was not required as to most of the claims because such claims were not medical claims. Moreover, appellant asserted that any deficiency in the affidavit was cured by the coroner's report and the testimony of her physician expert, William Fannin, M.D., in which Fannin testified as to causation, opining that Costell's fall ultimately led to his death. Finally, appellant contended that Brown's affidavit of merit was sufficient to satisfy Civ.R. 10(D)(2) because the issue of causation was within the common knowledge of a layperson and did not require the expert testimony of a physician. Alternatively, in the event that the trial court agreed with appellees that

8.

Brown's affidavit of merit was defective, appellant urged that she should be granted a reasonable time to cure such defect.

{¶ 18} On June 1, 2016, the trial court issued its decision on appellees' motion for summary judgment. In its decision, the court found that appellant's survivorship claims found in Counts 1, 3, 4, 6, 9, 10, and 11 of the complaint constituted medical claims under R.C. 2305.113(E)(3). As such, the court found that these claims were subject to dismissal because they were filed outside of the one-year statute of limitations applicable to medical claims. Further, the trial court found that appellant's remaining wrongful death claims were subject to dismissal because they were not supported by an adequate affidavit of merit under Civ.R. 10(D)(2). Specifically, the court concluded that Brown was incompetent to opine as to the cause of Costell's death, a necessary element in a wrongful death action. Moreover, the court was not persuaded by appellant's assertion that the defect was cured by Fannin's testimony and the coroner's report. The court noted that such evidence was not attached to the complaint and was therefore not relevant for purposes of determining whether the complaint was sufficient. Finally, the trial court rejected appellant's contention that she was entitled to be provided with a reasonable amount of time to cure the defect in the affidavit. In rejecting this argument, the court found that Brown's incompetency did not constitute a curable defect, and therefore appellant was left without an affidavit of merit. The court also found that appellant was not entitled to additional time to file an affidavit of merit because appellant failed to establish good cause to do so.

9.

{¶ 19} In light of its finding that appellant's survivorship claims were time-barred and the wrongful death claims were subject to dismissal due to the lack of an affidavit of merit, the trial court granted appellees' motion for summary judgment as to all of the claims contained in appellant's complaint. Appellant timely appealed.

## B. Assignments of Error

{¶ 20} On appeal, appellant assigns the following errors for our review:

1. The trial court erred in granting Appellees' Motion for Summary Judgment as to Counts 1, 3, 4, 6, 9, 10, and 11 of Appellant's Amended Complaint by finding that these claims constituted "medical claims" as defined by R.C. 2305.113.

2. The trial court erred by dismissing Counts 2, 5, and 7 of Appellant's Amended Complaint by finding that her affidavit of merit was defective pursuant to Civil Rule of Procedure 10(D)(2) and could not be cured.

## II. Analysis

## A. Standard of Review

{¶ 21} A motion for summary judgment is reviewed de novo by an appellate court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "'When reviewing a trial court's ruling on summary judgment the court of appeals conducts an independent review of the record and stands in the shoes of the trial court.'" *Gunsorek v.*

10.

*Pingue*, 135 Ohio App.3d 695, 700, 735 N.E.2d 487 (10th Dist.1999), quoting *Baker v. Buschman Co.*, 127 Ohio App.3d 561, 566, 713 N.E.2d 487 (12th Dist.1998).

{¶ 22} In order to obtain summary judgment at the trial level,

> [I]t must be determined that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219, 631 N.E.2d 150 (1994), citing *Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 65-66, 609 N.E.2d 144 (1993); *see also* Civ.R. 56(C).

### B. Dismissal of Survivorship Claims

{¶ 23} In her first assignment of error, appellant argues that the trial court erred in granting summary judgment to appellees on her survivorship claims by finding that these claims constituted "medical claims" as defined by R.C. 2305.113.

{¶ 24} Under R.C. 2305.113(E)(3),

> "Medical claim" means any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice registered nurse, physical therapist, physician assistant,

emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person. "Medical claim" includes the following:

(a) Derivative claims for relief that arise from the plan of care, medical diagnosis, or treatment of a person;

(b) Claims that arise out of the plan of care, medical diagnosis, or treatment of any person and to which either of the following applies:

(i) The claim results from acts or omissions in providing medical care.

(ii) The claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.

(c) Claims that arise out of the plan of care, medical diagnosis, or treatment of any person and that are brought under section 3721.17 of the Revised Code;

(d) Claims that arise out of skilled nursing care or personal care services provided in a home pursuant to the plan of care, medical diagnosis, or treatment.

{¶ 25} "The term 'medical claim' as defined in R.C. 2305.113(E)(3) has two components that the statute states in the conjunctive: (1) the claim is asserted against one

or more of the specifically enumerated medical providers and (2) the claim arises out of medical diagnosis, care, or treatment." *Estate of Stevic v. Bio-Medical Application of Ohio, Inc.*, 121 Ohio St.3d 488, 2009-Ohio-1525, 905 N.E.2d 635, ¶ 18.

**{¶ 26}** Here, appellant does not contest the trial court's grant of summary judgment in favor of Heartland of Waterville OH, LLC, as to appellant's survivorship claims. Rather, appellant argues that the trial court disregarded the first prong of the *Stevic* test set forth above and failed to consider whether the three remaining entity appellees (HCR ManorCare, Inc., HCR Manor Care Services, Inc., and Heartland Employment Services, LLC) were medical providers given the fact that they are not licensed by the state of Ohio to provide skilled nursing care and personal care services and, thus, do not meet the definition of a "nursing home" under R.C. 3721.01(A)(6).[3]

**{¶ 27}** In its decision granting summary judgment, the trial court stated the following with respect to the argument appellant raises on appeal:

> Plaintiff wishes to argue that her claims against the corporate Defendants cannot be considered medical claims because such Defendants do not fall within the categories of medical care givers or facilities to which statutorily defined medical claims are limited. However, it is well-established

---

[3] R.C. 3721.01(A)(6) provides:

"Nursing home" means a home used for the reception and care of individuals who by reason of illness or physical or mental impairment require skilled nursing care and of individuals who require personal care services but not skilled nursing care. A nursing home is licensed to provide personal care services and skilled nursing care.

13.

that creative or artful pleading will not change the nature of a claim. Regardless of the various failures alleged in Plaintiff's survivorship claims, the only potential negligence supported by the evidence directly relates to Heartland's diagnosis, medical care, and treatment of Mr. Costell. The established facts of this case in no way support a claim that ordinary negligence on the part of any actor proximately caused Mr. Costell's fall and resulting injuries.

{¶ 28} Referring to this portion of the trial court's decision, appellees argue that summary judgment was proper because appellant failed to advance evidence in support of her allegedly non-medical claims against HCR ManorCare, Inc., HCR Manor Care Services, Inc., and Heartland Employment Services, LLC.[4]

{¶ 29} Having reviewed the record in this case, we agree with the trial court that appellant's various non-medical claims against the aforementioned entities are not supported by the evidence. Under these claims, appellant asserted that Costell's injuries resulted from (1) a lack of staffing and failure to implement administrative guidelines; (2) a failure to provide Costell with certain residents' rights; (3) an exaggeration of the entities' ability to provide the appropriate level of care to meet Costell's needs when, in fact, the entities would provide the least amount of care possible in order to maximize profit; and (4) the entities' failure to warn Costell of the inadequate staffing and

---

[4] Appellees acknowledge that these entities are not nursing homes within the definition of R.C. 3721.01(A)(6).

14.

unqualified nursing personnel. However, the record contains sparse evidence to support such causation arguments.

{¶ 30} On the issue of causation, the only tenable argument to be made from the evidence is that Costell was injured following a lack of adequate supervision from Heartland's nursing personnel. This is precisely the nature of the time-barred medical claim brought against Heartland of Waterville OH, LLC. The claims for negligence, fraud, breach of fiduciary duty, and premises liability against the remaining entities lack evidentiary support on the issue of causation, and were therefore appropriately dismissed on summary judgment. Accordingly, appellant's first assignment of error is not well-taken.

{¶ 31} In addressing the issues raised in the dissent, App.R. 16 states that the appellant's brief shall include a "statement of the assignments of error presented for review" and "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented[.]" Under App.R. 12(A)(1)(b), an appellate court's review is limited to the assignments of error, the trial court's record, and, unless waived, oral argument.

{¶ 32} The parties' arguments as to the first assignment of error center on the issue of whether the claims raised by appellant are medical claims and whether they were properly dismissed for want of evidence as to causation. Under App.R. 12(A)(1)(b), we find it prudent to limit our analysis to that issue. *See Steinbrink v. Greenon Local Sch. Dist.*, 2d Dist. Clark No. 11CA0050, 2012-Ohio-1438, ¶ 45 ("We may affirm a judgment

15.

for reasons different from those on which the trial court relied, *State v. Peagler*, 76 Ohio St.3d 496, 668 N.E.2d 489 (1996), but that does not imply authority to reverse a judgment on error that was not assigned and argued, sua sponte.").

### C.  Dismissal of Wrongful Death Claims

{¶ 33} In her second assignment of error, appellant argues that the trial court erred in granting summary judgment to appellees on her wrongful death claims based upon its conclusion that Brown's affidavit of merit was inadequate under Civ.R. 10(D)(2) to establish Costell's cause of death.

{¶ 34} Civ.R. 10(D)(2), which requires the attachment of an affidavit of merit to a plaintiff's complaint in which medical claims are asserted, states:

> (D)  Attachments to pleadings.
>
> * * *
>
> (2)  Affidavit of merit; Medical, dental, optometric, and chiropractic liability claims.
>
> (a)  Except as provided in division (D)(2)(b) of this rule, a complaint that contains a medical claim, dental claim, optometric claim, or chiropractic claim, as defined in R.C. 2305.113, shall be accompanied by one or more affidavits of merit relative to each defendant named in the complaint for whom expert testimony is necessary to establish liability. Affidavits of merit shall be provided by an expert witness meeting the requirements of Evid.R. 702 and, if applicable, also meeting the

requirements of Evid.R. 601(D). Affidavits of merit shall include all of the following:

(i)  A statement that the affiant has reviewed all medical records reasonably available to the plaintiff concerning the allegations contained in the complaint;

(ii)  A statement that the affiant is familiar with the applicable standard of care;

(iii)  The opinion of the affiant that the standard of care was breached by one or more of the defendants to the action and that the breach caused injury to the plaintiff.

* * *

(d)  An affidavit of merit is required to establish the adequacy of the complaint and shall not otherwise be admissible as evidence or used for purposes of impeachment.  Any dismissal for the failure to comply with this rule shall operate as a failure otherwise than on the merits.

(e)  If an affidavit of merit as required by this rule has been filed as to any defendant along with the complaint or amended complaint in which claims are first asserted against that defendant, and the affidavit of merit is determined by the court to be defective pursuant to the provisions of division (D)(2)(a) of this rule, the court shall grant the plaintiff a reasonable

time, not to exceed sixty days, to file an affidavit of merit intended to cure the defect.

**{¶ 35}** Relevant to our analysis of appellant's assignment of error, Brown indicated in her affidavit of merit that she "reviewed all medical records reasonably available related to John Costell, Sr. concerning his care and treatment at Heartland of Waterville." Moreover, Brown testified that she was familiar with the applicable standard of care based upon her training, education, and experience in nursing and long term care. Based upon her review, Brown opined:

> [I]t is my professional opinion, within a reasonable degree of nursing probability, * * * that Heartland of Waterville, its agents, its parent and/or subsidiary corporations, assigns, administrators, and/or subsequent purchasers involved in anyway [sic] with the operation, supervision, management, control, and/or assumption of liability of this nursing home, its employees, its nurses and its staff, did deviate from the accepted standards of nursing care in the treatment of John Costell, Sr. and these deviations did result in and proximately caused John Costell, Sr. to suffer severe injuries and damages.

**{¶ 36}** Later in her affidavit, Brown specified that the injuries caused by appellees' deviations in the standard of care included a left hip fracture, dehydration, sepsis, and pneumonia. She then concluded her affidavit by opining that Costell's injuries were "the proximate result of Heartland of Waterville's deviations from the

18.

nursing standard of care outlined above." Notably, Brown did not opine as to Costell's cause of death. Indeed, she acknowledged her incompetency to render such an opinion during a subsequent deposition.

{¶ 37} "In medical malpractice cases, the general rule is that the plaintiff must prove causation through medical expert testimony in terms of probability to establish that the injury was, more likely than not, caused by the defendant's negligence." *Roberts v. Ohio Permanente Med. Group*, 76 Ohio St.3d 483, 485, 668 N.E.2d 480 (1996); *see also Segedy v. Cardiothoracic & Vascular Surgery of Akron, Inc.*, 182 Ohio App.3d 768, 2009-Ohio-2460, 915 N.E.2d 361, ¶ 11 (9th Dist.) (requiring expert testimony to establish causation in a wrongful death case premised on medical negligence). The exception to that rule is "in cases where the nature of the case is such that the lack of skill or care of the [medical professional] is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience to understand and judge it * * *." *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 130, 346 N.E.2d 673 (1976). However, the common knowledge exception is limited in scope and "[r]elatively few courts in Ohio have applied the common knowledge exception to obviate the need for expert witness testimony on the malpractice issue." *Lipp v. Kwyer*, 6th Dist. Lucas No. L-02-1150, 2003-Ohio-3988, ¶ 14, citing *Buerger v. Ohio Dep't of Rehabilitation & Correction*, 64 Ohio App.3d 394, 399, 581 N.E.2d 1114 (10th Dist.1989).

{¶ 38} On appeal, appellant asserts that expert testimony was not required on the issue of causation because the fact that Costell was injured and subsequently died as a

19.

result of his fall at Heartland was readily apparent to a layperson. In support of her argument, appellant cites the Eighth District's decision in *Dimora v. Cleveland Clinic Found.*, 114 Ohio App.3d 711, 683 N.E.2d 1175 (8th Dist.1996).

{¶ 39} In *Dimora*, the appellate court affirmed the trial court's denial of Cleveland Clinic's motion for directed verdict in a malpractice case in which Dimora asserted that a student nurse acted unreasonably by leaving Dimora unattended at her walker while the nurse opened a bathroom door for Dimora. *Id.* at 718. The record clearly established that Dimora had a documented history of balance difficulties and needed assistance with the use of her walker. *Id.* Ultimately, Dimora fell backward while unattended and was injured. *Id.* The trial court allowed the case to be submitted to the jury despite the absence of expert testimony as to the appropriate standard of care and the breach thereof. On appeal, the Eighth District found that the common knowledge exception was applicable on these facts and affirmed the trial court's denial of Cleveland Clinic's motion for directed verdict. *Id.* at 719; *see also Carte v. The Manor at Whitehall*, 10th Dist. Franklin No. 14AP-568, 2014-Ohio-5670 (applying common knowledge exception where patient died following a fall in which he sustained a subarachnoid hemorrhage).

{¶ 40} Having examined the facts of *Dimora*, we find that case to be distinguishable from the case sub judice on at least two important points. First, the patient in *Dimora* was clearly incapable of walking on her own accord, even with the assistance of a walker. Such was not the case here where the record establishes that Costell did not have the same history of falls and lack of balance. Second, the causal

20.

connection between Dimora's fall and her subsequent injuries was direct and obvious; the causal connection between Costell's fall and eventual death was uncertain and was further complicated by his unrelated preexisting conditions including terminal end-stage COPD and pneumonia, among other things. *See Murray v. Doney*, 6th Dist. Lucas No. L-01-1365, 2002 Ohio App. LEXIS 334 (Feb. 1, 2002), *6 ("Another fact that affects the need for medical expert testimony to establish proximate cause is the plaintiff's medical history."). How Costell's hip fracture (which could perhaps be deemed to be an obvious consequence of the fall) led Costell to subsequently develop sepsis, dehydration, and worsening pneumonia resulting in his death would be unclear to the layperson. Therefore, we find that this case is distinguishable from those cited by appellant, and we conclude that the common knowledge exception does not apply.

{¶ 41} Regardless of our conclusion as to the inapplicability of common knowledge exception, appellant argues that the express terms of Civ.R. 10(D)(2) make it clear that expert testimony is not required as to the ultimate cause of Costell's death. Rather, appellant urges that the rule merely requires expert testimony that appellees' negligence "caused some injury." Because Brown opined in her affidavit that appellees' deviations from the standard of care caused Costell to suffer severe injuries, appellant argues that the affidavit establishes the adequacy of the complaint as to the wrongful death claims.

{¶ 42} In support of her argument, appellant cites the First District's decision in *Tranter v. Mercy Franciscan Hosp. W. Hills*, 1st Dist. Hamilton No. C-061039, 2007-

21.

Ohio-5132. In that case, Tranter brought a medical malpractice action alleging that the nurses' negligence caused the decedent to fall and sustain injuries. *Id.* at ¶ 2. The trial court dismissed the action with prejudice based on its finding that Tranter's nurse expert lacked the qualifications to render an opinion on the issue of proximate cause in her affidavit of merit. *Id.* at ¶ 5. On appeal, the First District held that the trial court erred in dismissing the action because, even if the expert was not qualified to express the opinion that the fall caused the decedent's death more than a year later, she was qualified to state that the nurses' negligence "caused injury to the plaintiff" within the meaning of Civ.R. 10(D)(2)(a)(iii). In so holding the court emphasized:

> [U]nder the language of Civ.R. 10(D)(2)(c), the purpose of the affidavit is "solely to establish the adequacy of the complaint and shall not otherwise be admissible as evidence or used for purposes of impeachment." The requirement of the affidavit, then, is to winnow out utterly frivolous claims; its purpose is not to test the sufficiency of the plaintiff's evidence on the ultimate issue of the defendant's liability. Under that standard, [the nurse expert's] affidavit was sufficient to withstand a challenge under Civ.R. 10(D)(2). *Id.* at ¶ 12.

{¶ 43} However, this holding is not universally embraced throughout the state. Indeed, in *McKay v. Ohio State Univ. Med. Ctr.*, Ct. of Cl. No. 2013-00120, 2013 Ohio Misc. LEXIS 211 (Apr. 22, 2013), the Court of Claims examined the sufficiency of a nurse's affidavit of merit, which contained her opinion that "the standard of care was

22.

breached by the Defendant to the action and * * * said breach proximately caused the injury to the Plaintiff." *Id*. at *5. Upon examination, the court held that the plaintiff's wrongful death action was not supported by a sufficient affidavit of merit under Civ.R. 10(D)(2) because the nurse was not competent to opine regarding the cause of death. *Id.* at *6. Although the nurse opined as to the proximate cause of injury, no expert testimony was offered by way of affidavit attached to the complaint as to the cause of death.

{¶ 44} Likewise, the affidavit attached to appellant's amended complaint in this case does not include expert testimony as to the cause of Costell's death. Moreover, Brown has acknowledged that, as a nurse, she is not competent to render such expert testimony. We disagree with the court in *Tranter* that such testimony is not required under Civ.R. 10(D)(2), especially in cases such as the one at bar, where the only remaining claims are claims for wrongful death in which appellant is required to establish that appellees' breach of the standard of care proximately caused Costell's death. Under Civ.R. 10(D)(2)(a)(iii), expert testimony is required on the element of causation, and in this case the threshold issue under that element is the cause of death. By her own admission and appellant's acknowledgement, Brown is not competent to render expert testimony on that issue. Therefore, we agree with the trial court that appellant's affidavit of merit was defective under Civ.R. 10(D)(2).[5]

---

[5] Appellant attempts to avoid this conclusion by relying upon evidence that was produced during discovery in the form of deposition testimony from appellant's physician expert and the coroner's death certificate and autopsy report. However, we look to the evidence that was attached to complaint under Civ.R. 10(D)(2). Indeed, Civ.R. 10(D)(2) is

**{¶ 45}** As her final argument under the second assignment of error, appellant argues that the trial court erred in failing to afford her an opportunity to cure the defect in her affidavit of merit prior to granting summary judgment. We agree.

**{¶ 46}** Under Civ.R. 10(D)(2)(e), if an affidavit of merit is determined to be defective under Civ.R. 10(D)(2)(a), "the court shall grant the plaintiff a reasonable time, not to exceed sixty days, to file an affidavit of merit intended to cure the defect." Here, the trial court concluded that appellant, in submitting an affidavit of merit from a nurse who was not competent to render an expert opinion on the issue of causation, effectively failed to attach an affidavit of merit. Therefore, the court concluded that it was not required to provide appellant with an opportunity to cure under Civ.R. 10(D)(2)(e).

**{¶ 47}** In *Chapman v. South Pointe Hosp.*, 186 Ohio App.3d 430, 2010-Ohio-152, 928 N.E.2d 777 (8th Dist.), the plaintiff filed an affidavit of merit executed by a registered nurse along with her amended complaint. *Id.* at ¶ 6. The hospital argued that the affidavit was defective under Civ.R. 10(D)(2) because a nurse is not qualified to express an opinion on proximate cause in a medical malpractice action. *Id.* The court agreed with the hospital and granted its motion to dismiss. *Id.* On appeal, the Eighth District reversed, holding that, "although the affidavit in this case was deficient under the

designed to ferret out frivolous medical claims at the outset of the litigation. Therefore, we decline to consider evidence on the issue of causation that was produced after the filing of the complaint and not attached to the complaint as doing so would be in direct contravention of Civ.R. 10(D)(2).

24.

requirements of Civ.R. 10(D), [the plaintiff] should have been granted an extension of time, not to exceed 60 days, to cure the defect." *Id.* at ¶ 28; *see also Jarina v. Fairview Hosp.*, 8th Dist. Cuyahoga No. 91468, 2008-Ohio-6846 (holding that the trial court errs when it does not afford a plaintiff an opportunity to cure a defect under Civ.R. 10(D)(2)(e)).

{¶ 48} Similarly here, we find that the trial court erred under Civ.R. 10(D)(2)(e) when it dismissed appellant's wrongful death claims without providing her an extension of time, not to exceed 60 days, to cure the defect in the affidavit of merit. We disagree with the trial court's treatment of the affidavit of merit as a nullity simply because Brown lacked the competency to testify concerning Costell's cause of death.

{¶ 49} Although the lack of causation evidence in the affidavit may not be remedied by Brown, Civ.R. 10(D)(2)(e) demands that the trial court afford appellant with the opportunity to "file an affidavit of merit intended to cure the defect." This opportunity is not conditioned upon the competency of the original affiant, nor does the rule demand that the affiant in the supplemental affidavit be the same affiant as in the original affidavit. Thus, under Civ.R. 10(D)(2)(e), appellant is permitted to cure the defective affidavit of merit by securing a new affidavit of merit from a competent expert that includes the missing causation testimony. While the express language of the rule compels this result, we are also mindful of the axiom that cases should be decided on their merits rather than on technical grounds. *Baker v. McKnight*, 4 Ohio St.3d 125, 129, 447 N.E.2d 104 (1983) ("Decisions on the merits should not be avoided on the basis of

25.

mere technicalities; pleading is not 'a game of skill in which one misstep by counsel may be decisive to the outcome * * * [rather] the purpose of pleading is to facilitate a proper decision on the merits.'").

{¶ 50} As to appellant's second assignment of error, the concurring/dissenting judge finds that appellees' arguments under Civ.R. 10(D)(2) were improperly raised in its motion for summary judgment and were untimely insofar as they were not raised in a motion to dismiss under Civ.R. 12(B)(6). Once again, we find that our analysis as to appellant's second assignment of error should be limited to the arguments raised by the parties before the trial court and in their briefs to this court. App.R. 12(A)(1)(b).

{¶ 51} Accordingly, we find appellant's second assignment of error well-taken.

### III. Conclusion

{¶ 52} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed, in part, and reversed, in part. Summary judgment as to appellant's wrongful death claims is reversed as to counts two, five, and seven. This matter is remanded to the trial court and appellant is hereby granted an extension of time, not to exceed 60 days, to cure the defect in appellant's affidavit of merit. The trial court's summary judgment ruling on the remaining claims is affirmed. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed, in part
and reversed, in part.

L-16-1143
Chalmers, etc. v.
HCR Manorcare,
Inc., et al.

Thomas J. Osowik, J.                              _____
                                                              JUDGE

James D. Jensen, P.J.
CONCUR.                                           _____
                                                              JUDGE


Christine E. Mayle, J.                            _____
CONCURS, IN PART, AND DISSENTS,                            JUDGE
IN PART, AND WRITES SEPARATELY.


**MAYLE, J.**

{¶ 53} I concur in the majority's conclusion that summary judgment should be

affirmed as to defendants HCR ManorCare, Inc.; Heartland Employment Services, LLC;

HCR Manor Care Services, Inc.; and Becky Ziviski. I write separately to clarify that I

would affirm summary judgment in favor of defendants HCR ManorCare, Inc.; Heartland

Employment Services, LLC; and HCR Manor Care Services, Inc. (the "HCR Corporate

Defendants") because those entities had no legal duty to Costell—each for different

reasons. And while I agree with the majority's reversal of summary judgment in favor of

defendant Heartland of Waterville, OH, LLC on Counts 2, 5, and 7, I would reverse

because I believe that Civ.R. 10(D)(2) is inapplicable to a motion for summary judgment under Civ.R. 56—and, therefore, I dissent from the majority's order that appellant must cure the alleged deficiencies in the affidavit of merit within 60 days to avoid dismissal with prejudice.

## I. The HCR Corporate Defendants

{¶ 54} In the trial court and on appeal, appellant argues that her claims against the HCR Corporate Defendants are "ordinary negligence claims"—not "medical claims" under R.C. 2305.113—because the HCR Corporate Defendants are not statutorily-enumerated medical providers and because her negligence claims against these defendants do not arise out of "the plan of care, medical diagnosis, or treatment" of Costell as required for a claim under R.C. 2305.113. The trial court not only found that appellant's claims against the HCR Corporate Defendants are time-barred medical claims under R.C. 2305.113, but it also concluded that appellant's theory of direct negligence against these entities is without merit.

{¶ 55} Although the trial court focused on the causation element of negligence, we are not confined by that analysis on appeal. "[S]ince an appellate court's review of a summary judgment exercise is de novo, we can substitute the proper analysis for the trial court's analysis on this specific point, and then affirm on that basis." *Portage Cty. Bd. of Commrs v. City of Akron*, 156 Ohio App.3d 657, 2004-Ohio-1665, 808 N.E.2d 444, ¶ 57 (11th Dist.). When considering a negligence claim, any discussion of causation necessarily assumes the existence of the predicate elements of (1) a legal duty and (2) a

28.

breach of that duty. Thus, it is better to start the analysis by considering whether the HCR Corporate Defendants had any duty to Costell that would justify an ordinary negligence theory of liability.

{¶ 56} Although not addressed by the trial court, the parties presented argument and evidence on this issue with their summary judgment briefing. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.*, 122 Ohio App.3d 100, 103, 701 N.E.2d 383 (12th Dist.1997).

## A. HCR ManorCare, Inc.

{¶ 57} In its motion for summary judgment before the trial court, HCR ManorCare, Inc. argued that it is merely the parent company of Heartland of Waterville, OH, LLC and should be granted summary judgment because the record lacks evidence sufficient to pierce the corporate veil. I agree.

{¶ 58} The evidence establishes that HCR ManorCare, Inc. and Heartland of Waterville, OH, LLC are separate entities, and that the allegedly-negligent nursing care was rendered in a nursing home operated by Heartland of Waterville, OH, LLC. Thus, HCR ManorCare, Inc. had no independent duty to appellant and may be held liable for the alleged misdoings of Heartland of Waterville, OH, LLC only if there is evidence sufficient to pierce the corporate veil. In Ohio, a plaintiff seeking to pierce the corporate veil must show (1) the parent's control over the subsidiary was so complete that the corporation has no separate mind, will, or existence of its own; (2) the parent exercised

29.

control over the subsidiary in such a manner as to commit fraud, an illegal act, or a similarly unlawful act; and (3) injury or unjust loss resulted to the plaintiff from such control and wrong. *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538, ¶ 18, 29.

{¶ 59} Although the trial court record demonstrates that HCR ManorCare, Inc. exerts *some* control over Heartland of Waterville, OH, LLC—e.g., HCR ManorCare, Inc. reviews and approves its subsidiaries' budgets, carries liability insurance for its subsidiaries, and maintains a "Quality Committee" that is responsible for reviewing the quality of care provided by its indirectly-owned skilled nursing centers—no reasonable person could find that such evidence demonstrates that Heartland of Waterville, OH, LLC lacked a separate mind, will, or existence of its own. And even if such evidence arguably presented a question of fact on the control element, the record is lacking any evidence to demonstrate that HCR ManorCare, Inc. exerted control over Heartland of Waterville, OH, LLC in such a manner as to commit fraud, an illegal act, or a similarly unlawful act. *Dombroski* at ¶ 29.

## B. Heartland Employment Services, LLC

{¶ 60} In the trial court, appellant argued that Heartland Employment Services, LLC ("HES") had a direct duty to Costell based upon a written leasing agreement between HES and Heartland of Waterville, OH, LLC. That is, appellant argued that HES is liable because the staff of Heartland of Waterville, OH, LLC is employed by HES and

leased to Heartland of Waterville, OH, LLC on a daily basis pursuant to a written Amended and Restated Employee Leasing Agreement.

The loaned servant rule provides that where one person lends his servant to another for a particular employment, within the context of that employment, the servant is treated as if he were the servant of the one to whom he was lent. *Halkias v. Wilkoff Co.* (1943), 141 Ohio St. 139, 151, 47 N.E.2d 199. Furthermore, the loaned servant relationship is not affected by the fact that the party who lent the servant continues to pay him as long as the "borrowing" party controls the servant while he accomplishes the task he was sent to perform. *Id.* at 153; see also Restatement of the Law 2d, Agency (1958) 501-503, § 227, illustration five. *Lawson v. May Dept. Store*, 7th Dist. Mahoning No. 00 CA 191, 2001 Ohio App. LEXIS 5325, 6 (Nov. 27, 2001).

{¶ 61} Although the leasing agreement provides that HES retains the right to direct and control the employees it leases to Heartland of Waterville, OH, LLC, the record lacks any evidence to suggest that HES exercised that right. There is no evidence that HES actually directed or controlled Heartland of Waterville, OH, LLC's nursing home staff in their development of a care plan for or supervision of Costell. Moreover, although appellant alleges that Costell was injured because the nursing home was purportedly understaffed, there is no evidence that HES had any involvement in determining staffing levels; HES merely provided whatever personnel that Heartland of

31.

Waterville, OH, LLC deemed necessary to operate its nursing home. Accordingly, based on this record, HES had no duty to appellant and cannot be held vicariously liable for the alleged negligence of any nursing personnel it leased to Heartland of Waterville, OH, LLC.

### C. HCR Manor Care Services, Inc.

{¶ 62} In their summary judgment briefing, the appellees argued that HCR Manor Care Services, Inc. should be dismissed because it ceased to exist on November 16, 2009, when it converted from a corporation to a limited liability company. But as appellant correctly argued, this is irrelevant because HCR Manor Care Services, LLC, the successor entity that was in existence while Costell was a patient of Heartland of Waterville in 2013, appeared in this case and answered the complaint as "improperly named as 'Inc.'"

{¶ 63} Appellant's only substantive argument against summary judgment, however, was that HCR Manor Care Services, LLC provided certain services to Heartland of Waterville, OH, LLC under a written contract. But that merely establishes that HCR Manor Care Services, LLC had a legal duty to Heartland of Waterville, OH, LLC; the record lacks any evidence that appellant is entitled to claim any rights under that contract. *See Reeves v. Vannatta*, 10th Dist. Franklin No. 96APE04-407, 1996 Ohio App. LEXIS 3454, 6 (Aug. 15, 1996) ("'[A] mere stranger cannot intervene and claim by action the benefit of a contract between other parties.'").

## II. The Civ.R. 10(D)(2) Affidavit of Merit

{¶ 64} As appellant argues, a Civ.R. 10(D)(2) affidavit of merit is designed "to winnow out utterly frivolous claims; its purpose is not to test the sufficiency of the plaintiff's evidence on the ultimate issue of the defendant's liability." *Tranter v. Mercy Franciscan Hosp. W. Hills*, 1st Dist. Hamilton No. C-061039, 2007-Ohio-5132, ¶ 12. I agree. Indeed, because a Civ.R. 56 motion for summary judgment is expressly designed to test the sufficiency of the evidence, I would hold that it was error for the trial court to consider the Civ.R. 10(D)(2) affidavit of merit because it is not "evidence" and is therefore inapplicable.

{¶ 65} Under Civ.R. 56(C), summary judgment may be granted only if "it appears from *the evidence* or stipulation, and only from *the evidence* or stipulation, that reasonable minds can come to but one conclusion * * *." (Emphasis added.) And Civ.R. 10(D)(2)(d) expressly provides that "[a]n affidavit of merit is required to establish the adequacy of the complaint and *shall not otherwise be admissible as evidence* or used for purposes of impeachment." (Emphasis added.) Moreover, the Supreme Court of Ohio has held that "[t]he proper response to the failure to file the affidavit required by Civ.R. 10(D)(2) is a motion to dismiss pursuant to Civ.R. 12(B)(6)." *Fletcher v. Univ. Hosps. of Cleveland*, 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147, paragraph one of the syllabus.

{¶ 66} Appellees did not file a Civ.R. 12(B)(6) motion to dismiss; they filed a Civ.R. 56 motion for summary judgment. At the summary judgment phase of a wrongful

33.

death case, the relevant inquiry with respect to causation should be whether the plaintiff put forth *admissible evidence*, including expert testimony if required, to establish that the defendant proximately caused the injury and, ultimately, death. But appellees moved for summary judgment—and the trial court granted the motion—for the sole reason that the Civ.R. 10(D)(2) affidavit of merit, attached to the complaint, lacked expert testimony regarding cause of death. Even if that somehow caused the pleading to be deficient, it was not a basis to grant summary judgment. By doing so, the court wholly ignored the actual evidence in the record—including deposition testimony from appellant's physician expert and the coroner's death certificate and autopsy report—that may or may not have been sufficient to withstand summary judgment on the issue of causation. *That* is where the focus should have been under Civ.R. 56.

{¶ 67} I therefore concur in the majority's reversal of summary judgment in favor of the only remaining defendant, Heartland of Waterville, OH, LLC, on the non-time-barred wrongful death claims in Counts 2, 5, and 7, but dissent from the majority's order that appellant must cure the affidavit of merit in response to the Civ.R. 56 motion.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.