[Cite as *Washburn v. OhioHealth Corp.*, 2022-Ohio-4453.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

RYAN WASHBURN,

    PLAINTIFF-APPELLANT,

    v.

OHIOHEALTH CORPORATION, ET AL.,

    DEFENDANTS-APPELLEES.

CASE NO. 9-22-08

O P I N I O N

Appeal from Marion County Common Pleas Court
General Division
Trial Court No. 20 CV 311

**Judgment Affirmed**

**Date of Decision:  December 12, 2022**

APPEARANCES:

    *J.C. Ratliff* for Appellant

    *Kenneth R. Beddow* for Appellee

**WILLAMOWSKI, J.**

{¶1} Plaintiff-appellant Ryan Washburn ("Washburn") appeals the judgment of the Marion County Court of Common Pleas, alleging that the trial court erred in granting summary judgment to the defendants-appellees OhioHealth Corporation ("OHC") and Marion General Hospital ("MGH") (collectively "the Appellees"). For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On April 2, 2018, Washburn went to a doctor's appointment, seeking treatment for his ongoing anxiety issues. Ex. 10. Sept. 23 Depo. 72. Washburn had taken a medication in the past to manage his anxiety but was told at this appointment that he was not going to be prescribed this medication in the future. *Id.* In response, he indicated "that when he ran out of his current supply of Xanax that he would kill himself because his anxiety is so bad." Ex. 10. Washburn then "stormed out of there." Sept. 23 Depo. 73, 79.

{¶3} Based on this reaction, his medical care provider became concerned that Washburn might be suicidal and told Washburn's mother that he needed to come back into the office. Sept. 23 Depo. 73. However, Washburn left the doctor's office and went back to his home. *Id.* at 73. Washburn's medical care provider then filed an application for his emergency admission to the hospital on the belief that there was a "substantial risk" of "harm to self" and that Washburn was "in need" of mental health treatment in a hospital. Ex. 10.

{¶4} Since Washburn had left the doctor's office, his medical care provider called the police to perform a welfare check on him at his house. Sept. 23 Depo. 73. The police arrived at Washburn's house a few hours after he had returned home. *Id.*[1] Washburn testified that he had, by this point, drunk "anywhere from twelve to twenty beers." *Id.* at 94. The police then took Washburn to Marion General Hospital where he informed the hospital personnel that he had been drinking and that he used heroin. *Id.* at 87, 94.

{¶5} Washburn was placed on a psychiatric hold and was not, therefore, permitted to leave the hospital. Johnson Depo. 38. The names of people on psychiatric hold are entered into a computer system that is accessible to hospital security personnel. *Id.* at 37-38, 43. Washburn was also given a "blue gown" that was to be worn by the psychiatric patients who were not allowed to leave the premises. *Id.* at 45, 66. He was then placed in a room with a nurse who was monitoring him. Sept. 23 Depo. 135. Washburn later testified that he "knew * * * [he] couldn't leave." *Id.* at 138.

{¶6} Just before 5:00 A.M. on April 3, 2018, Washburn ran out of his room and towards the exit in an attempt to escape. Sept. 23 Depo. 95. The nurse observing Washburn screamed. Johnson Depo. 46-47. Alex M. Johnson

---

[1] Washburn's mother testified that his doctor's appointment was "late morning or early afternoon," though she could not remember precisely when the appointment occurred. Merlack Depo. 60. Washburn testified that the police arrived at his house several hours after he had gotten home. Sept. 23 Depo. 70. According to his medical records, Washburn arrived at the emergency room at roughly 7:00 P.M. on Monday, April 2, 2018. Ex. 1, 3.

("Johnson"), a protective services officer at the hospital, heard the nurse and began to go in the direction of Washburn's room. *Id.* At this point, he saw Washburn running towards the exit, wearing a blue gown. *Id.* at 47, 49. Johnson ran after Washburn, yelling "Stop. You can't leave." *Id.* at 48.

{¶7} Washburn then ran through the first set of doors at the exit, but the second set of doors were slow to open. Sept. 23 Depo. 101. By the time that Johnson had caught up to Washburn, the second set of doors was "only six inches opened." *Id.* At this time, Washburn was still facing the exit. *Id.* at 102. Johnson then came up behind Washburn; put his arms around Washburn; and took him to the ground. Johnson Depo. 48. Sept. 23 Depo. 101-102.

{¶8} Washburn testified that he lifted his hands "straight up" about "one second" before Johnson made contact with him. Sept. 23 Depo. 101-102. He affirmed that he "put up * * * [his] hands * * * almost at the same time that * * * [he] got tackled[.]" *Id.* at 102. Washburn further testified that he did not have time to turn around and face Johnson before being subdued. *Id.* Johnson then put Washburn's arms behind his back. *Id.* at 104. At some point in this process, Washburn's wrist was injured. *Id.* Washburn was then taken back to his room where a doctor examined him and concluded that his wrist was broken. *Id.* 110.

{¶9} On September 2, 2020, Washburn filed a complaint that named OHC and MGH as defendants. Doc. 1. The complaint stated that this was a "refiled case brought under the Savings Clause" in R.C. 2305.19 because "[t]his matter" had

previously been "voluntarily dismissed without prejudice pursuant to Civ. Rule 41(A) * * * on December 23, 2019." Doc. 1. On June 29, 2021, Washburn and Johnson sat for depositions.[2] Johnson Depo. 1. June 29 Depo. 1.

{¶10} On September 1, 2021, the Appellees filed a motion for summary judgment, arguing that Washburn had, in fact, filed a medical claim and had failed to attach an affidavit of merit with his complaint as was required by Civ.R. 10(D)(2). Doc. 20.[3] In response, Washburn argued that he raised claims of ordinary negligence; that he did not raise a medical claim; and that no affidavit of merit was required in this case. Doc. 24. On January 12, 2022, the trial court issued a judgment entry finding that Washburn had raised a medical claim and had failed to file an affidavit of merit in compliance with Civ.R. 10(D)(2). Doc. 29. The trial court then granted summary judgment in favor of the Appellees. Doc. 29.

{¶11} Washburn filed his notice of appeal on February 10, 2022. On appeal, he raises the following two assignments of error:

**First Assignment of Error**

**The trial court erred in granting Defendant-Appellee OhioHealth Corporation and Marion General Hospital's motion for summary**

---

[2] This was Washburn's second deposition in this case. He had had previously sat for another deposition on September 23, 2019. Sept. 23 Depo. 1.

[3] Typically, the proper vehicle to challenge a plaintiff's failure to comply with Civ.R. 10(D)(2) is a motion to dismiss. *Fletcher v. Univ. Hosps. of Cleveland*, 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147, ¶ 13. *See May v. Donich Neurosurgery and Spine, L.L.C.*, 9th Dist. Summit No. 29215, 2019-Ohio-4246, ¶ 11 (holding that *Fletcher* does not stand for the proposition "that *every* challenge to the sufficiency of an affidavit of merit must be brought in the form of a Civ.R. 12(B)(6) motion"). But in this appeal, Washburn does not challenge the Appellees' use of a motion for summary judgment as the vehicle to challenge the absence of an affidavit of merit in this case. *Chalmers v. HCR ManorCare, Inc.*, 2017-Ohio-5678, 93 N.E.3d 1237, ¶ 19, 33, 50 (6th Dist.). For this reason, we decline to consider this issue.

**judgment by incorrectly determining that Plaintiff-Appellant's claims are 'medical claims' pursuant to R.C. 2305.113.**

**Second Assignment of Error**

**Alternatively, regardless of whether Plaintiff-Appellant's claims are found to be 'medical claims' pursuant to R.C. 2305.113, the 'common knowledge and experience' exception applies to this matter and no affidavit of merit is required.**

Before we proceed to examining each of Washburn's assignments of error, we will set forth the general legal standard that governs motions for summary judgment.

*Legal Standard for Motions for Summary Judgment*

**{¶12}** "Appellate courts consider a summary judgment order under a de novo standard of review." *Schmidt Machine Company v. Swetland*, 3d Dist. Wyandot No. 16-20-07, 2021-Ohio-1236, ¶ 23, citing *James B. Nutter & Co. v. Estate of Neifer*, 3d Dist. Hancock No. 5-16-20, 2016-Ohio-7641, ¶ 5. Under Civ.R. 56,

> **[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law * * *. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.**

Civ.R. 56(C). Accordingly, summary judgment is to be granted

> **only when it is clear '(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as**

> **a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.'**

*Beair v. Management & Training Corp.*, 3d Dist. Marion No. 9-21-07, 2021-Ohio-4110, ¶ 15, quoting *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46, 47 (1978).

{¶13} Initially, "[t]he party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 370, 1998-Ohio-389, 696 N.E.2d 201, 204 (1998). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Neal v. Treglia*, 2019-Ohio-3609, 144 N.E.3d 1045, ¶ 12 (3d Dist.), quoting *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 13.

{¶14} If the moving party carries this initial burden, "[t]he burden then shifts to the party opposing the summary judgment." *Bates Recycling, Inc. v. Conaway*, 2018-Ohio-5056, 126 N.E.3d 341, ¶ 11 (3d Dist.), quoting *Middleton v. Holbrook*, 3d Dist. Marion No. 9-15-47, 2016-Ohio-3387, ¶ 8. "In order to defeat summary judgment, the nonmoving party may not rely on mere denials but 'must set forth specific facts showing that there is a genuine issue for trial.'" *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10, quoting Civ.R. 56(E).

{¶15} "[B]ecause summary judgment is a procedural device to terminate litigation, it must be awarded with caution." *Williams v. ALPLA, Inc.*, 2017-Ohio-4217, 92 N.E.3d 256, ¶ 6 (3d Dist.), quoting *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138 (1992). "The court must thus construe all evidence and resolve all doubts in favor of the non-moving party * * *." *Webster v. Shaw*, 2016-Ohio-1484, 63 N.E.3d 677, ¶ 8 (3d Dist.).

*First Assignment of Error*

{¶16} Washburn argues that the trial court erred in concluding that he raised medical claims in his complaint. He asserts that he raised negligence claims and that he did not, therefore, need to file an affidavit of merit in this case.

Legal Standard

{¶17} The Ohio Revised Code defines "medical claims" in R.C. 2305.113(E)(3), which reads, in its relevant part, as follows:

> **'Medical claim' means any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice registered nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person. * * ***

R.C. 2305.113(E)(3). Based on the "plain and unambiguous" wording of this statute, the Supreme Court of Ohio held that

> **a medical claim under R.C. 2305.113(E)(3) is a claim that both (1) arises out of the medical diagnosis, care, or treatment of any person and (2) is asserted against one or more of the statutorily enumerated medical providers.**

*Estate of Stevic v. Bio-Med. Application of Ohio, Inc.*, 121 Ohio St.3d 488, 2009-Ohio-1525, 905 N.E.2d 635, ¶ 16, 19.  "If either requirement is not met, no medical claim exists."  *Notario v. American National Red Cross*, S.D. Ohio No. 2:20-CV-6034, 2021 WL 3738895, *2 (Aug. 24, 2021).

{¶18} Under R.C. 2305.113(E)(3), a claim is not "a medical claim simply because the injury arises in a hospital."  *Christian v. Kettering Med. Ctr.*, 2016-Ohio-1260, 62 N.E.3d 658, ¶ 42 (2d Dist.), quoting *Rome v. Flower Mem. Hosp.*, 70 Ohio St.3d 14, 17, 1994-Ohio-43, 635 N.E.2d 1239, 1242 (1994) (Pfeifer, J., dissenting).  Rather, a medical claim must "arise[] out of the medical diagnosis, care, or treatment of any person."  R.C. 2305.113(E)(3).

> **The terms 'medical diagnosis' and 'treatment' are terms of art, which relate to the identification and alleviation of a physical or mental illness, disease, or defect.  *Browning v. Burt*, 66 Ohio St.3d 544, 557, [1993-Ohio-178,] 613 N.E.2d 993 (1993) (discussing a prior analogous version of R.C. 2305.11).**

*Christian* at ¶ 29.  This includes actions that are "'ancillary to and an inherently necessary part of' * * * [a patient's] diagnosis and treatment * * *."  *Id*. at ¶ 36, quoting *Godby v. Med Cent. Health Systems,* 5th Dist. Richland No. 04CA89, 2005-Ohio-2671, ¶ 10, quoting *Rome* at 16-17.  Further,

> **[i]n the context of the statute of limitations for 'medical claims,' 'care' has been defined as 'the prevention or alleviation of a**

> **physical or mental defect or illness.'** [*Browning* **at 557].** **The**
> **Supreme Court of Ohio has cautioned that the term 'care' 'should**
> **not be broadly interpreted when the context in which it is used is**
> **properly understood.'** *Id.*

*Christian* at ¶ 29.[4]   Under this definition, "not all care that occurs in a medical

facility constitutes 'medical care' within the meaning of R.C. 2305.113(E)(3)."

*Lerner v. Broadview NH, LLC*, 2017-Ohio-8001, 98 N.E.3d 1014, ¶ 14 (10th Dist.).

> **To differentiate between medical care and general care, courts**
> **look to whether the act or omission at issue was part of a medical**
> **test, procedure, or treatment; whether a medical professional had**
> **ordered the provision of the care that was being given (or**
> **withheld) at the time of the injury; and whether the care provided**
> **(or withheld) required any medical expertise or professional skill.**

(Citations omitted.) *Id.*  In determining whether an injury arose from the "treatment

or care" of a patient, the Ohio Supreme Court has considered whether "the

employees were 'required to use a certain amount of professional skill' in

performing the allegedly negligent acts." *Id.* at ¶ 13, citing *Rome* at 16-17.

{¶19} Further, "Ohio Civ.R. 10(D)(2) requires that every complaint which

contains a medical claim, as defined in R.C. 2305.113, must be accompanied by an

affidavit of merit." *Jackson v. Northeast Pre-Release Ctr.*, 10th Dist. Franklin No.

09AP-457, 2010-Ohio-1022, ¶ 13.  *See* Civ.R. 10(D)(2)(a).  "Clearly, the purpose

behind the rule is to deter the filing of frivolous medical-malpractice claims."

---

[4] At that time that *Browning v. Burt* was decided, the definition of "medical claim" was in R.C. 2305.11(D)(3). *Browning, supra*, at 556.  Subsequently, the provision defining a "medical claim" was moved to R.C. 2305.113(E)(3).  Both R.C. 2305.11(D)(3) and R.C. 2305.113(E)(3) included language that defined a medical claim as "aris[ing] out of the medical diagnosis, care, or treatment of any person." *Christian* relied on *Browning* to interpret terminology that existed in both R.C. 2305.11(D)(3) and 2305.113(E)(3). *Christian, supra*, at ¶ 29, citing *Browning, supra*, at 557.

*Fletcher v. Univ. Hosps. of Cleveland*, 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147, ¶ 10. A complaint that raises a medical claim and that is filed without an affidavit of merit is subject to dismissal. *Rose v. Tievsky*, 2d Dist. Montgomery No. 29024, 2021-Ohio-3051, ¶ 48; *Wade v. Lima Mem. Hosp.*, 2015-Ohio-929, 28 N.E.3d 161, ¶ 29 (3d Dist.). *See* Civ.R. 10(D)(2)(d).

Legal Analysis

{¶20} On appeal, the disagreement between the parties is whether Washburn has raised a medical claim under the two-prong test that was set forth by the Ohio Supreme Court in *Estate of Stevic*, *supra*, at ¶ 19. There is no dispute as to the second prong of this test. Appellant's Brief, 11. Johnson, as a protective services officer employed at MGH, is an enumerated medical provider under R.C. 2305.113(E)(3). *See* Johnson Depo. 8-10. Rather, this dispute arises over the first prong of this test: whether Washburn's "claim arises out of * * * [his] medical diagnosis, care, or treatment * * *." *Estate of Stevic, supra*, at ¶ 19.

{¶21} In this case, Washburn was hospitalized for observation and psychological evaluation pursuant to an application for emergency admission that was submitted by a doctor. Ex. 10-11. Johnson testified that, when a pink slip is issued for a patient, "the doctor places them on a hold, and then we have a certain process that we do according to that." Johnson Depo. 38-39. He further explained that "[p]sych patients in the ER who are there for evaluation are not allowed to leave." *Id*. at 38.

**{¶22}** Washburn's testimony indicates that he knew he was supposed to remain in the hospital for observation. Sept. 23 Depo. 138. He affirmed that, as he ran down the hallway, he heard "lots of people [were] * * * yelling for [him] * * * to stop * * * and not run." *Id*. at 99. He also thought he remembered hearing the nurse "yelling for the security guard" to come. *Id*. at 98. Washburn further indicated that he was not "going to come back simply because anybody asked * * * him to." *Id*. at 107.

**{¶23}** Johnson testified that he heard a nurse screaming, "He's running. He's running." Johnson Depo. 47. He then saw Washburn running towards the exit. *Id*. at 47, 49. He explained that he knew Washburn was not permitted to leave because he was wearing one of the blue gowns that are issued to "psych patient[s]" who must remain in the hospital. *Id*. at 45, 49. Johnson testified that he issued verbal commands, yelling, "Stop Don't leave," as he ran towards Washburn. *Id*. at 48. However, Washburn "wouldn't listen to the verbal command to stop." *Id*. at 67.

**{¶24}** Further, Washburn testified that he made it through the first set of doors at the exit. Sept. 23 Depo. 101. He stated that the second set of doors at the exit did not "open real quick" and was, at the time that he heard Johnson approaching him, "only six inches opened." *Id*. *See* Johnson Depo. 48. Washburn admitted that he had been pushing at the door and agreed that "it would have required physical force for someone to [have] stop[ped him] * * *." Sept. 23 Depo. 102, 108. He also affirmed that, up until the "split second" before Johnson made

-12-

contact with him, he "would have gone out that door if [he] * * * had the chance[.]" *Id.* at 107.

**{¶25}** Washburn testified that, when he was at the second door, he heard Johnson approaching him from behind and put his hands in the air "probably a second" before Johnson made contact with him. Sept. 23 Depo. 101-102. Further, he also affirmed that he "put up * * * [his] hands * * * almost at the same time that * * * [he] got tackled." *Id.* at 102. Washburn admitted that he did not make any statements to Johnson that would exhibit an intention to terminate his attempted escape. *Id.* at 117. According to his testimony, Washburn was also still facing the door that was slowly opening as he lifted his hands. *Id.* at 102. He was not facing Johnson. *Id.* Johnson testified that he "went hands on to stop him [Washburn] from leaving" and gave him "like a bear hug from behind." Johnson Depo. 48.

**{¶26}** Based upon these facts, we conclude that Washburn's claims in this case "arose out of * * * [his] medical diagnosis, care, or treatment * * *." R.C. 2305.113(E)(3). Washburn had been involuntarily hospitalized for psychiatric observation pursuant to a doctor's order. Ex. 10-11. His diagnosis, treatment, and care were dependent on him remaining in the hospital. Johnson testified that he was told that, "if you see a blue gown running, you stop them from leaving because a blue gown is for psych patients only." Johnson Depo. 45. He also testified that, "if he's a psych patient and cannot leave, I have to stop him." *Id.* at 67. At the time of the incident, Johnson saw that Washburn was wearing one of the blue gowns that

were issued to patients who had been placed on a "psych hold" and who were not permitted to leave the hospital. Johnson Depo. 38, 45. Johnson then took measures to prevent Washburn from escaping because he knew that Washburn was subject to a doctor's order that did not permit him to leave. Thus, in this case, Johnson's actions to prevent Washburn from leaving the hospital were undertaken pursuant to a doctor's order that was issued for Washburn's diagnosis, treatment, or care.

{¶27} For these reasons, we conclude the trial court did not err in determining that Washburn had raised a medical claim. *See Rome, supra,* at 17 (finding a medical claim where a patient was negligently transported in a wheelchair from a physical therapy appointment that was ordered by a doctor); *Godby, supra*, at ¶ 2, 10 (finding a medical claim existed where a patient was injured after a hospital security guard "improperly placed [her] on a stretcher * * *"); *Long v. Warren Gen. Hosp.*, 121 Ohio App.3d 489, 700 N.E.2d 364 (11th Dist.) (finding a medical claim existed where a hospital employee acted negligently in transporting a patient to a diagnostic test that was to be conducted pursuant to a doctor's order). Accordingly, Washburn's first assignment of error is overruled.

*Second Assignment of Error*

{¶28} Alternatively, Washburn argues that, even if the trial court did not err in concluding that he raised medical claims, the common knowledge and experience exception applies in this case and that he was, therefore, not required to file an affidavit of merit.

-14-

Legal Standard

**{¶29}** "Expert-opinion evidence * * * is required where the inquiry pertains to a highly technical question of science or art or to a particular professional or mechanical skill." *Rose, supra*, at ¶ 47, quoting *Jones v. Hawkes Hospital of Mt. Carmel*, 175 Ohio St. 503, 196 N.E.2d 592 (1964), paragraph one of the syllabus.

> **Proof of the standard of care and competence that a business or profession requires must necessarily be provided through expert testimony unless the lack of skill or care is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience to understand and judge it.**

*Dickerson Internationale, Inc. v. Klockner*, 139 Ohio App.3d 371, 376, 743 N.E.2d 984, 988 (2d Dist. 2000).

**{¶30}** Under the common knowledge and experience exception, "subjects which are within the ordinary, common and general knowledge and experience of mankind, need not be established by expert opinion testimony." *Ramage v. Central Ohio Emergency Serv., Inc.*, 64 Ohio St.3d 97, 103, 1992-Ohio-109, 592 N.E.2d 828, 833 (1992).

> **A 'common knowledge' claim sounds in ordinary negligence and does not invoke the specialized elements of a professional malpractice claim. [*Jones v.*] *Hawkes* [*Hosp. of Mt. Carmel*, 175 Ohio St. 503,] 506[, 196 N.E.2d 592 (1964)]. As a result such claims do not require the plaintiff to establish by expert testimony the appropriate standard of care and proximate cause as elements of the case, nor to attach to the complaint an affidavit of merit pursuant to Civ.R. 10(D).**

*Franks v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-442, 2013-Ohio-1519, ¶ 8.  The common knowledge and experience exception has been applied in the context of analyzing the necessity or sufficiency of an affidavit of merit.  *Adkinson v. Alex Bell Dental – Daniel Cobb, DDS, LLC*, 2020-Ohio-5269, 162 N.E.3d 187, ¶ 18, 20 (2d Dist.); *Rose, supra*, at ¶ 44; *Chalmers v. HCR ManorCare, Inc.*, 2017-Ohio-5678, 93 N.E.3d 1237, ¶ 37-41, 44, fn. 5 (6th Dist.) (noting that "the common knowledge exception is limited in scope * * *").

Legal Analysis

{¶31} Washburn argues that Johnson's actions in apprehending Washburn fall into the common knowledge and experience exception because Johnson tackled Washburn after he had "surrender[ed]" and "was estopped from escaping * * *." Appellant's Brief, 16.  Washburn points to his deposition testimony where he stated that he lifted his hands up to signal his "surrender[]." *Id*.  However, he affirmed that he "put up * * * [his] hands * * * almost at the same time that * * * [he] got tackled" and that he was not facing Johnson at this time.  *Id*. at 101-102.  Washburn indicated that he did not make any verbal statements to Johnson that would indicate that he was no longer attempting to escape.  Sept. 23 Depo. 101-102, 117.  He also affirmed that he was not "going to come back simply because anybody asked [him] * * * to" and affirmed that "it would have required physical force for someone to [have] stop[ped him] * * *." *Id*. at 107, 108.

**{¶32}** While Washburn argues that he was "estopped from escaping," his deposition testimony indicates that he was in front of a pair of exterior doors that were in the process of slowly opening as Johnson was approaching him. Appellant's Brief, 16. Sept. 23 Depo. 101. Washburn was also facing the exit—not Johnson—and had been pushing at the doors. *Id*. at 102. Since Washburn was facing a set of exterior doors that were still in the process of opening, his escape remained a possibility at the time that Johnson made contact with him. Washburn even admitted that he "would have gone out that [second] door if [he] * * * had the chance." *Id*. at 107. Washburn's deposition testimony contains no indication that he would have voluntarily returned to his room without Johnson's intervention. Thus, Washburn's own statements indicate that Johnson did not tackle Washburn after he was cornered and no longer had any opportunity to escape.

**{¶33}** Further, Johnson testified in his deposition about the training programs that he completed specifically for his job as a security officer at MGH. Johnson Depo. 18-26. These various training programs covered topics such as subject control, weapon retention, de-escalation techniques, and various defense tactics. *Id*. at 20. Ex. 5. He successfully completed the basic healthcare security officer examination. Ex. 5. *See Rome, supra*, at 16-17 (noting that an activity required "a certain amount of professional skill" in determining whether it gave rise to a medical claim); *Haskins v. 7112 Columbia, Inc*., 2016-Ohio-5575, 69 N.E.3d 1150, ¶ 36 (7th Dist.). Johnson also testified that, during the course of his employment at MGH, he

was taught how to identify "psych hold" patients from the blue gowns that they were issued. Johnson Depo. 45.

{¶34} Given this testimony, we cannot conclude that the trial court erred in finding that "the use of force in an involuntary hospitalization is outside of * * * common knowledge, and that expert knowledge regarding the standard of care is necessary." Doc. 29. Since the common knowledge and experience exception is not applicable in this case, Washburn has not, with this argument, carried the burden of demonstrating that the trial court erred in concluding that the common knowledge and experience exception did not obviate the need to file an affidavit of merit in this case. Accordingly, Washburn's second assignment of error is overruled.

*Conclusion*

{¶35} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Marion County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**MILLER and SHAW, J.J., concur.**

**/hls**